# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **EMOJI COMPANY GMBH,** | |
| Plaintiff, | **Case No.: 23-cv-2317** |
| ~ against ~ | The Hon. District Judge Andrea R. Wood |
| **THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS** and **UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,** | |
| Defendants, | |

**MEMORANDUM OF LAW** *by*
**DEFENDANT ELECTRICIAN GUY** *in support of*
**MOTION TO DISMISS** *pursuant to* **RULE 12(B)(2), (3), (4), (5),** *and* (6);
**TO QUASH SERVICE, AND FOR OTHER RELIEF**

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Defendant "Electrician Guy"*

i

A **Table of Contents**

B. **Introduction and Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

C. **Argument**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  I. There is No Jurisdiction Over Defendant because
    Plaintiff did not Properly Serve Process. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    a. Plaintiff Did Not Obtain a Summons
      for Any Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    b. There is No Proof of
      Valid Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    c. The Purported Service was not Valid because it
      Contained no Chinese-Language Translation;
      Plaintiff did not Confirm it was Delivered;
      and it was not sent even once . . . . . . . . . . . . . . . . . . . . . . . . 6

    d. E-mail Service is Improper Under the
      Hague Convention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  II. This is the Wrong Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

  III. The IUDTPA Claim is Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

  IV. There is no Claim Stated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D. **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### B. Introduction and Procedural Background

The Complaint brings the wrong claims, before the wrong court for the wrong relief. And this Court has no personal jurisdiction over the Defendants. The Defendant therefore respectfully submits that the Complaint should be Dismissed with Prejudice, Service of Process should be Quashed, and this case proceed to a Hearing on the damages from the TRO.

Plaintiff bypassed the well-oiled machinery of Amazon and Walmart's intellectual property enforcement system, *See,* http://amazon.com/report/infringement and https://brandportal.walmart.com/ipservices, to file a trawling Complaint that makes vague, generalized allegations against more than a hundred entities. The Complaint at ¶ 19, *et passim* (ECF 1) and the Plaintiff's Motion for an Attachment at pp. 8-9 (ECF 10) joins the Defendants because they are interrelated.

After imbricating itself in a lawsuit against dozens of Defendants, the Plaintiff sought to circumvent their bread-and-butter obligations under the Federal Rules and the Due Process rights of the Defendants by seeking leave to serve process by shooting a spam e-mail with a link to the filings to unknown addresses, *See* ECF 10.

The Honorable Court issued a scheduling order (ECF 63) for the Defendant identified as Number 138 ("Electrician Guy")(referred to here as the "Defendant"), which they now do with this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3), (4), (5), and (6) and other relevant laws and rules; and to Quash Service (ECF 37), to set this matter down for a hearing on damages from the TRO, and for such other and further relief as this Court may deem appropriate.

C.   Argument

>   I.   There is No Jurisdiction Over Defendant because Plaintiff did not Properly Serve Process

"Before a federal Court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987) Such service "is the mechanism 'by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" Waeltz v. Delta Pilots Ret. Plan, 301 F. 3d 804 at n. 3 (7th Cir. 2002) *citing* Omni Capital, 484 U.S. at 104. "[A]ctual notice of the litigation is insufficient to satisfy Rule 4's requirements." Mid-Continent Wood Prods., Inc. v. Harris, 936 F.2d 297 (7th Cir. 1991).

In this case, the Plaintiff failed to obtain any proper Summons nor serve any. The Defendant failed to serve process on any Defendant consistent with the Rules and with consideration to the Due Process rights of any Defendant. And the Plaintiff entirely failed to prove that they served process as directed by the Court. For this reason, the Complaint must be Dismissed pursuant to Fed. R. Civ. P. 12(b)(2)(4) and (5) because this Court lacks personal jurisdiction over the Defendant, there has been insufficient process, and there was insufficient service of process.

>   a.   Plaintiff Did Not Obtain a Summons for Any Defendant

The grave step of invoking federal jurisdiction requires an individual invitation from the Court to each individual Defendant, as the Rules provide:

> "On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served."

2

Fed. R. Civ. P. 4(b).

Further, this invitation needs to be consistent with the federal pleading rules:

"Every pleading must have a caption with the court's name, a title, a file number . . . . The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."

Fed. R. Civ. P. 10(a).

While other Circuits let the caption requirement slide or deem it met when the identities are in the body of the Complaint, "the Seventh Circuit falls into still a third camp, deeming Rule 10(a) to be mandatory – as indeed the language of the Rule suggests. '[T]o make someone a party,' the court has held, 'the plaintiff must specify him in the caption and arrange for service of process.' " Shipley v. Cooney & Conway Creditors (In re C.P. Hall Co.), 506 B.R. 751, 755 (Bankr. N.D. Ill. 2014) citing Myles v. United States, 416 F.3d 551, 551 (7th Cir. 2005)(and collecting cases in the Seventh Circuit). Plaintiff never provided the Clerk with a proper Summons.

And the Plaintiff cannot blame the Clerk for issuing an improper Summons. The Record in this case shows that Plaintiff never requested a Summons for each Defendant as required under Rule 4(b). Under Rule 10(a) and 4(b) a "group of people" is not a proper defendant, Shipley v. Cooney, 506 B.R. at 756 *citing* Jenkins v. Wis. Res. Ctr., No. 09-cv-323-BBC, 2009 U.S. Dist. LEXIS 53397 (W.D. Wis. June 23, 2009) and collecting cases in the Seventh Circuit and nation-wide that a separate, individual Summons must be obtained for each and every Defendant.

This requirement for a Summons to identify on its face the parties, and to be issued individually for each Defendant is not some empty pleasantry left over from the pre-internet era.

These notice requirements are central to the attempt to assert federal jurisdiction over a Party and formally invite them to Court. Plaintiffs across the country – even when granted

3

leave for e-service – have had no problem complying with these requirements. *See, e.g.*, Purple Innovation, LLC v. Chuang Fan Handicraft Co., Case No. 2:22-cv-620, 2023 U.S. Dist. LEXIS 75678, 2023 WL 3168485 (D.Utah Apr. 28, 2023) in which the Court allowed for alternative service. Consistent with the Rule, the Plaintiff sought and obtained an individual Summons for each Defendant. *See* Docket in Purple Innovation, LLC v. Chuang Fan Handicraft Co., Case No. 2:22-cv-620 at ECF No. 4-7 through 4-44, 94 (requesting Summons for each individual Defendant) and ECF 8-48, 98-124 (separately issuing Summons for each named Defendant).[1]

In this case, the Plaintiff did not request, obtain or serve a proper Summons on any Defendant and therefore the Complaint must be dismissed, the Service of Process Quashed, and this matter proceed to a Hearing on damages caused by the TRO.

### b. There is No Proof of Valid Service of Process

"[P]roof of valid service of process is always a prerequisite to judicial relief." Thompson v. U.S., 445 Fed. Appx. 878 (7th Cir. 2011) *citing* Omni Capital, 484 U.S. at 104. Even assuming the Summonses were on the level, and assuming the validity of e-service in this case, there is nothing in the record that shows the Plaintiff validly served process.

On May 15, 2023, Plaintiff submitted a two-page Return of Service with a printed signature of William Kalbac. It alleges:

> "On May 15, 2023, I sent an email containing a copy of the Complaint, TRO and Summons to the email addresses identified in Exhibit 2 to the Anna Reiter and any email addresses provided for Defendants by third parties that include a link to a website containing the aforementioned pleadings."

Return of Service at p. 2 (ECF 37).

---

[1] Printout of the Purple Innovation Docket annexed as Exhibit A to the Affidavit in Support.

4

The Undersigned and we would respectfully submit, no reasonable Defendant or Court can understand what these factual claims mean. The reference to "the Anna Reiter" appears to be a reference to the Declaration of Reiter docketed as ECF 10, 12-18. Exhibit 2 of that Declaration is a blob of over a 1,000 pages of context-free screenshots from various websites. A CTRL-F search of the blob for a "@" identifies no e-mail and otherwise there nothing in the Return of Service or the Exhibit, which it references, that indicates any e-mail was sent to any party.

Absent any further clarification including copies of the actual e-mail(s) by which service of process was allegedly dispatched, the Court must quash the service and dismiss the Complaint.

And about that "link": The Defendant is based in China as are many or the other Defendants. We respectfully submit that the Court may take Judicial Notice that internet users in China are subject to the 防火长城 (transliterated in pinyin as Fánghuǒ Chángchéng, and popularly known as the Great Firewall). The two most common ways that the Undersigned knows of to share a link to federal court filings is either the nonprofit courtlistener.com database of federal Court filings or a Dropbox link. The Undersigned confirmed that both are blocked from access throughout China, *See* http://www.chinafirewalltest.com/?siteurl=courtlistener.com and http://www.chinafirewalltest.com/?siteurl=dropbox.com (both last visited September 3, 2023).[2] Now to be clear, the Undersigned does not know if those were the links provided, because it is not disclosed in the purported Service of Process. But it speaks to deficiencies of an Affidavit that fails to include such key information about the purported Service.

At the least, before asserting jurisdiction over the Defendant, the Court should allow limited Discovery and/or conduct factual hearing at which the Process Server can testify

---

[2] Printouts annexed as Exhibit B to the Affidavit in Support

5

about the circumstances of the service and purported compliance with the Court's Order.  "I have a secret list of e-mail addresses to which I sent the papers and a link" is not an Affidavit of Service.

Absent proof that the Service was completed, the Defendant submits that this Court has no jurisdiction over the Defendant, the Complaint should be dismissed and the matter set down for a Hearing on damages from the TRO.

   **c.** **The Purported Service was not Valid because it Contained no Chinese-Language Translation; Plaintiff did not Confirm it was Delivered; and it was not sent even than once**

Alternative Service overseas requires local language translation.  Service by alternative means requires more than one attempt.  And an Affidavit of Service by e-mail should contain a confirmation of Receipt or at least confirmation of no bounceback.

When approving alternative service on Osama bin Laden and Al Qaeda for their alleged role in the United States Embassy Compound attack in Nairobi Kenya, the District Court authorized service by publication in "the Washington Law Reporter, The International Herald Tribune, and Al-Quds Al-Arabi (in Arabic) for six weeks".  Order of District Judge Colleen Kollar-Kotelly, Mwami v. U.S., et al., Case No. 1:99-cv-00125, D.E. 23 (D.D.C. Aug. 2, 1999).[3]  When victims sought relief against alleged cartels in Mexico, the Court authorized service by "publi[cation of] a Spanish-language notice of this lawsuit in one national newspaper of general circulation in Mexico once a week for six consecutive weeks . . ." Order of Magistrate Judge Clare R. Hochhalter, Langford v. Juárez Cartel, et al., Case No. 1:20-cv-00132 (D.N.D. Oct. 28, 2020)[4]

---

[3] Copy annexed as Exhibit C to the Affidavit in Support.
[4] Copy annexed as Exhibit D to the Affidavit in Support.

However profound the alleged wrongs of the Defendants in this case, surely they are entitled to same level of due process and basic procedural safeguards provided to cartels and violent international outlaws that include a local language translation and multiple publications.

The Defendant respectfully submits that the cases which have not required English translations are the exceptions that prove the rule. For example, in BP Prods. N. Am. v. Dagra, 236 F.R.D. 270, 2006 U.S. Dist. LEXIS 38100 (E.D.Va. 2006) the District Judge authorized alternative service on a Pakistan-based Defendant only after extensive efforts were made to locate the Defendant and two attempts under the Hague Convention failed. The Judge considered and then expressly declined to require an Urdu translation only after the Judge made *specific* findings about *the specific Defendant's* proficiency in English and the Defendant's operation of a multi-million dollar business in the United States, *See* BP Prods., 236 F.R.D. at 273-274. And even BP Prods. required the ad to run once a week for four weeks.

Further, given the likelihood that an e-mail sent from the United States with a link to a foreign language (potentially prohibited) website would be rejected by the Great Firewall or the recipients' e-mail filter, the Plaintiff should at the very least confirm that the e-mailed Service was not rejected, sent six times (consistent with the practice for service by newspaper publication), and should provide such confirmation in their Affidavit of Service.

This is not asking for the sky and the moon. Annexed as Exhibit E to the Aff. in Support is a copy of the Affidavit of Service in Purple Innovation from earlier this year showing how straightforward it was for a Plaintiff under similar circumstances to serve the Complaint with the individual Summons to each individual Defendant by e-mail six times (consistent with how service by publication often require six (6) printings over a number of weeks to confirm the

recipient's receipt) and to provide proof of service to the Court with confirmation that there was no bounceback.

The Defendant respectfully submits that even pursuant to this Court's order for alternative service, the Plaintiff was required to comply with the basic safeguards attendant to such e-service consistent with the practice of alternative service by publication and other modern means of service – these protections include a local language translation, six attempts by service, and confirmation that there was no bounceback of the e-mail.

Having not submitted a proper Proof of Service, this Court has no jurisdiction over the Defendant and the Complaint must be dismissed. The Court should also set this matter down for a Hearing on damages from the TRO.

### d. E-mail Service is Improper Under the Hague Convention

Service on the Defendant here is subject to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Convention") because the Defendant's address is known – that address is provided in black-and-white in the Plaintiff's Motion for a TRO, *See* NBA Props. v. P'ships & Unincorporated Ass'ns, 549 F.Supp. 3d 790, 795-796 (N.D. Ill. 2021) *citing* Compass Bank v. Katz, 287 F.R.D. 392, 394-95 (S.D. Tex. 2012) (collecting cases that confirm if a foreign address is known the Hague Convention controls).

Courts in this District have wrestled with the question of whether China's Declaration that it "[] oppose[s] the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention." Courtesy Translation of the Declaration of the People's Republic of China available online at https://www.hcch.net/en/

8

instruments/conventions/status-table/notifications/?csid=393&disp=resdn bars service by e-mail. NBA Props., 549 F.Supp. 3d at 798 described how "the issue is not free of doubt". We would respectfully direct the Court to the decision by the Honorable District Judge Gregory H. Woods, in Smart Study Co. v. Acuteye-US, 620 F.Supp. 3d 1382 (S.D.N.Y. 2022) that provides a comprehensive overview of service by e-mail in China in light of the Hague Convention as well as the Amici brief by Professor Benjamin L. Liebman of Columbia Law School's Hong Yen Chang Center for Chinese Legal Studies, a copy of which is annexed as Exhibit F to the Aff. in Support.

The upshot of Professor Liebman's learned assessment is that e-mail service is improper and Judge Wood's is inclined in that direction as well.

But even under NBA Props., the justifications for e-mail service do not apply here.

NBA Props. found that e-mail service on a Defendant with a known address does not violate the Hague Convention because: (1.) there is a need for speed; (2.) the business was conducted entirely through electronic communications; and (3) e-mail was the only way to catch an e-business scofflaw playing hide-and-seek with federal Court, *See* NBA Props., 549 F.Supp.3d at 797. None of those reasons apply here.

The case cited in NBA Props. for the Need for Speed explained:

"there is a need for speed that cannot be met by following the Hague Convention methods, when the Central Authority has refused to serve a particular complaint (perhaps based on its own public policy or substantive law limitations), or when a foreign country's Central Authority *fails to effect service within the six-month period provided by the Hague Convention.*"

Strabala v. Zhang, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (emphasis in original) *citing* 4B Fed. Prac. & Proc. Civ. § 1134 (4th ed.).

But respectfully, the Need for Speed cannot justify alternative service here,.

9

**First** – whatever delays may have been occasioned by the COVID disruptions, the Central Authority for China indicates that they are processing Hague Service requests in "around 6 months". *See* https://www.hcch.net/en/states/authorities/details3/?aid=243 last checked September 3, 2023, which is far less than the timeline deemed "impractical" in Strabala. China's webportal for digital delivery of papers pursuant to the Hague Convention is working better than ever - http://www.ilcc.online/index/Login/index (last checked September 3, 2023).

**Second** – the Plaintiff has not and cannot allege that they attempted service and were denied, or that China refused to effect service, a necessary precondition under Strabala.

**Third** – The protections put in place for this case (which kept the TRO under seal to obtain control over the Defendants' accounts and websites) could have been used for the several months required to finalize service under the Hague Convention.

**Fourth** – the Need for Speed does not obviate the due process concerns.

Next: NBA Props. suggested that e-mail is more reliable because "defendant's business appear[ed] to be conducted entirely through electronic communications, including eBay storefronts." Ouveinc Ltd. v. Alucy, No. 20-C-3490, 2021 U.S.Dist. LEXIS 118876, at *9 (N.D. Ill. June 25, 2021) *citing* Tommy Hilfiger Licensing, LLC. v. The P'ships & Unincorporated Ass'ns, No. 20 C 7477, Doc. 46 (N.D. Ill. March 24, 2021).

We respectfully submit that the Seventh Circuit should have a say about such a wide open door to avoid the standard requirements for service of process. But even assuming the "reliability" argument in Ouveinc and Tommy Hilfiger, the situation could not be more different here.

If the Plaintiff was serious about identifying a reliable way to contact the Defendants and to confirm that sales were made in Illinois, they could have made a test order from

10

each Defendant to: (i.) confirm sales were available in Illinois; (ii.) confirm their suspicion of the Defendants' interrelatedness that would justify their joinder in this lawsuit; (iii.) and obtain an actual confirmed address to which mail could be delivered. In this case, the Plaintiff cannot claim e-mail is more reliable when they themselves identified street addresses for each Defendant and had a simple way of obtaining further confirmation of those addresses.

Last: NBA Props. suggested e-mail service is appropriate citing Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1018 (9th Cir. 2002) where "[w]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effective service of process." NBA Props., 549 F.Supp. 3d at 797.[5]

There is no indication here that any Defendant is a scofflaw.

Since the justifications for e-mail service under NBA Props. do not apply here, the Court should find that e-mail service is invalid under the Hague Convention, service was improper and dismiss the Complaint. Then, this should be set down for a hearing on damages from the TRO.

### II. This is the Wrong Venue

"A civil action may be brought in—

"(1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

"(2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

"(3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in

---

[5] Of note, in Rio Props. v. Rio Int'l Interlink, 284 F.3d 1007 (9th Cir. 2002) the Court describes intensive efforts to identify other means of service, including three attempts at purported physical addresses and only *after* it became apparent that the physical delivery was impossible did the Court authorize e-mail service on the alleged "scofflaws".

11

>which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391

The Plaintiff cannot and does not allege that the Defendant (indeed, any Defendant) is resident at the Northern District of Illinois, See Complaint at ¶ 13 ("Defendants . . . reside in the People's Republic of China or other foreign jurisdictions."). § 1391(1) plainly doesn't apply.

The Plaintiff cannot and does not allege that a substantial part of the events or omissions giving rise to the claim occurred. Quite the contrary!

The allegations describe: alleged wrongdoing in China, Complaint at ¶ 13; the operation of websites in the Great States of Washington (Amazon); Arkansas (Walmart); and California (iOffer), *See* Complaint at ¶ 15, Prayer for Relief at 4.) *et passim*; the use of rogue servers overseas and perhaps domestically where servers are generally located at northern California (Silicon Valley, generally) and Washington (AWS). Indeed the Plaintiff itself organized under German law, Complaint at Exhibit A, p. 6 (USPTO Registration designating owner as "emoji company GmbH (GERMANY LIMITED LIABILITY COMPANY)".

§ 1391(2) plainly doesn't apply. There are no and can be no allegations that a substantial part of the events or omissions, or property that is subject to this action is situated in Illinois. This is a German Plaintiff seeking relief against Chinese Defendants operating, allegedly, in Arkansas, Washington State and Arkansas. Other than an uncompleted attempt to purchase infringing products from (among other sites – the Amazon UK site) to be delivered to Illinois, there is no connection to Illinois. Certainly not to the level where it can be said "a substantial part of the events" occurred here.

And pursuant to § 1391(3) there are a host of other districts where this action can be brought. Assuming they obtained personal and subject matter jurisdiction over the respective

Defendants, the Plaintiff claim jurisdiction where the stores are located (Arkansas, Washington State, and California respectively), in the Defendants' home jurisdictions, a District where sales are proven to have primarily occurred, or event at home in Germany. Lots of options – but without a nexus to Illinois, this District is not one of them.

Therefore, the Complaint should be dismissed because it was brought in the wrong venue, and the matter set down for a Hearing on damages from the TRO.

### III.     The IUDTPA Claim is Barred

The Fourth Count seeks relief alleging "willful violation of the Illinois Uniform Deceptive Trade Practices Act", Complaint at ¶ 55 ("IUDTPA"). The Illinois Supreme Court applied the "long-standing rule of construction in Illinois which holds that 'a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute'", Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 184-85 (2005) collecting cases, and declining to apply the Consumer Fraud Act for extra-Illinois activity.

Courts in this District have applied the Avery principle to analogous claims under the IUDTPA, See LG Elecs. U.S.A., Inc. v. Whirlpool Corp., 809 F.Supp. 2d 857, 859 (N.D. Ill. 2011)("The Court concludes that the rule in Avery applies to the IUDTPA"). To have the IUDTPA apply, it must occur "primarily and substantially" in Illinois. Avery and LG Elecs.

There are not and can be no allegations that the activity alleged here occurred "primarily and substantially" in Illinois. Just the opposite – it is the position of the Plaintiff that Defendants reside outside of Illinois, Complaint at ¶ 18. The Complaint alleges that the counterfeit products are targeted at "the United States", Complaint at ¶ 18. "Including Illinois", the Plaintiff is careful to add, but there is no allegation that the sales were primarily and substantially targeted

13

at Illinois. And indeed, neither the Complaint nor the supplemental material identifies a single sale by a single Defendant that occurred in the Prairie State. The Complaint alleges search engine optimization tactics that are not aimed at Illinois, Complaint at ¶ 22, that Defendants use hosting services outside of the United States, Complaint at ¶ 25 and that the Defendants engaged in nationwide and indeed global activities.

There is no sufficient nexus to bring an IUDTPA claim against the Defendant.

Further the Complaint fails to allege the necessary elements of the IUDTPA and any such claim is preempted by federal law.

For this reason, the Defendant respectfully submits that the IUDTPA claim must be dismissed with prejudice.

### IV. There is no Claim Stated

The Complaint seeks to bypass the highly functional trademark infringement programs maintained by Amazon (http://amazon.com/report/infringement) and (https://brandportal.walmart.com/ipservices), by recruiting this Court as its private intellectual property rights enforcement arm. This approach should not be ratified by the Court.

Recognizing the unwieldy nature of this lawsuit against hundreds of overseas Defendants, and the difficulty of "plead[ing] factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Barwin v. Vill. of Oak Park, 54 F.4th 443, 453 (7th Cir. 2022) *citing* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) the Complaint avoids the specifics of this case by making broad claims about U.S. Customs and Border Protection seizure statistics from 2012, Complaint ¶ 20, analysis of transaction logs in other cases, Complaint at ¶ 21,

14

alleged misuse of Marks that are not associated with the Plaintiff whatsoever ¶ 15, and a mishmash of other allegations of how Counterfeiters operate, how online sellers may be cooperating behind the scenes ¶ 19, and allegations about how internet sales work in the modern era and the work of customs enforcement, *See generally*, Complaint ¶¶ 14-24.

This background may be interesting, but irrelevant to any *specific* Defendant and the *specific* Causes of Action plead against *each* specific Defendant. The Complaint fails to state any condition of mind of any Defendant or the Defendants' connection with each other.

In a later Motion for a TRO, the Plaintiff submitted a blob of Exhibits without proper explanation of what the exhibits are, what they show, and how they may be relevant to the specific claims against any specific Defendant. Even if the Plaintiff were to later submit that blob of papers in opposition to a Motion to Dismiss, *See, e.g.*, Geinosky v. City of Chi., 675 F.3d 743 (7th Cir. 2012), those additional materials need to be "consistent with the pleadings", Heng v. Heavner, Beyers & Mihlar, LLC, 849 F.3d 348 (7th Cir. 2017). These later submissions would provide no support to the condition of mind generally of the putative Defendants, do not show why the Defendants were misjoined into a single action, and do not show that the elaborate counterfeiting ring alleged in the Complaint exists  The Exhibits to the Motion in Support of the TRO are a Stone Soup of webpage screenshots some of which show offerings of goods plainly protected as fair use, websites from the UK, all of which may contain secondary market goods that were purchased in legitimate streams of business, and any number of potentially actionable and potentially non-actionable products that may or may not be available for sale in the United States.

The Complaint failed to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8, and therefore the Defendant has no case to

15

Answer. The Complaint must be dismiss and this matter set down for a Hearing on damages from the TRO.

### D. Conclusion

For these reasons we respectfully submit that this Honorable Court should Dismiss the Complaint with Prejudice and put this matter down for a Hearing on the damages from the TRO; and enter such other and further relief as the Court may deem just and proper.

DATED: **SEPTEMBER 3, 2023**

RESPECTFULLY SUBMITTED,

By: *[signature]*

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Defendant "Electrician Guy"*

16

## CERTIFICATE OF SERVICE

    I hereby certify that on September 3, 2023, simultaneous with the filing of this Submission, a copy of this submission was served upon counsel for all Appearing Parties using the court's CM/ECF system which will provide a notice of electronic filing to the following counsel of record of consent in writing to accept this notice of service of this document by electronic means:

**Michael A. Hierl, Esq.**
**Robert Payton Mcmurray, Esq.**
**William Benjamin Kalbac, Esq.**
HUGHES SOCOL PIERS RESNICK & DYM,LTD.
Three First National Plaza
70 West Madison St., Suite 4000
Chicago, IL 60602
Phone: 312 580 0100
Email: Mhierl@hsplegal.com
   Wkalbac@hsplegal.com
   Rmcmurray@hsplegal.com
*Counsel for Plaintiff*


**Shan Zhu**
SHAN ZHU LAW GROUP, P.C.
3511-B Farrington Street, Suite #335
Flushing, NY 11354
Phone: (347) 470-7008
Email: Shan.Zhulaw@gmail.com
*Counsel for Defendant "Shenzhen Yi You Life Technology Co., Ltd. administrator | E4ulife |"*

17